# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| TIMOTHY L. KENDRICK, | : | Case No. 3:11-cv-27 |
| --- | --- | --- |
| Plaintiff, | : | District Judge Thomas M. Rose |
|  |  | Magistrate Judge Michael J. Newman |
| vs. | : |  |
| MICHAEL J. ASTRUE, | : |  |
| COMMISSIONER OF |  |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED.**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Timothy Kendrick ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). *See* doc. 6-2 at PAGEID 66.

This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), Defendant's memorandum in opposition (doc. 11), the administrative record (doc. 6), and the record as a whole.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed his DIB application on October 4, 2007, claiming that he has been "disabled" since February 11, 2002. Doc. 6-5 at PAGEID 178. However, the earliest date for a potential

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

finding of disability is May 15, 2007.[2] Plaintiff claims he is disabled due to various back impairments (including a fractured disc, two herniated discs, degenerative disc disease, and arthritis), as well as high blood pressure and diabetes. Doc. 6-6 at PAGEID 212.

Following initial administrative denials of his application, Plaintiff received a hearing before ALJ Peter Silvain ("ALJ Silvain") on December 14, 2009. Doc. 6-2 at PAGEID 72-123. On April 23, 2010, ALJ Silvain issued a written decision, concluding that Plaintiff was "not disabled." *Id.* at PAGEID 65.

Specifically, ALJ Silvain's "findings," which represent the rationale of his decision, were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from his effective alleged onset date of May 15, 2007, through his date last insured of December 31, 2007 (20 CFR 404.1571, *et se*, and Exhibit B-3-D).

3. Through the date last insured, the claimant had the following severe impairments: vertebrogenic disorder, multi-level degenerative disc disease, lumbar strain and sprain, and a chronic pain disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[2]Plaintiff previously applied for DIB on May 17, 2004, alleging a disability onset date of February 11, 2002. Doc. 6-3 at PAGEID 131. On May 14, 2007, ALJ Thaddeus Armstead, Sr. ("ALJ Armstead"), in a written decision, denied Plaintiff's benefits application. *Id.* at PAGEID 131-47. The Appeals Council denied review, and Plaintiff did not challenge that finding on appeal. *See* doc. 6-6 at PAGEID 208. Plaintiff did not appeal to the United States District Court under 42 U.S.C. § 405(g). *See* doc. 7 at PAGEID 736. Under principles of *res judicata*, the earliest he could be found "disabled" is May 15, 2007 -- the day after the issuance of the decision denying Plaintiff's prior application for DIB. *See Willis v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) subject to the following additional limitations: lifting of no more than ten pounds occasionally and five pounds frequently; sitting as much as six hours during any given eight-hour workday; standing and walking as much as two hours during any given eight-hour workday; he should have been given the opportunity to sit or stand an added five minutes per hour at his convenience and need not be consecutively; he could perform only occasional climbing of ramps or stairs; he could not climb ladders, ropes, or scaffolding; he must have been allowed to alternate sitting or standing position at fifteen minute intervals throughout the day; he could not perform tasks requiring the use of balance, or stooping, kneeling, crouching, or crawling; could not tolerate exposure to hazards such as or similar to heights and moving machinery, concentrated heat, cold, wetness, humidity, vibration; could not perform more than occasional twisting at the trunk; could occasionally bend forward to 45-degree angle without restriction by locking the spine by slight backwards extension and then bend forward 45 degrees using the hips. Secondary to his mental impairment, the claimant was limited to performing simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and which involved no more than simple, work-related decision[s] with few, if any workplace changes, and which involved no more than occasional interaction with the public and co-workers.[3]

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 20,1966 and was 41 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

---

[3]The Social Security Administration classifies jobs as "sedentary," "light," "medium," "heavy," and "very heavy" depending on the physical exertion requirements. 20 C.F.R. § 404.1567. "Sedentary work," as defined in 20 C.F.R. § 404.1567(a), "involves lifting no more than 10 pounds at a time" and "a certain amount of walking and standing is often necessary."

> transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 11, 2002, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

*Id.* at PAGEID 56-65 (brackets added).

The Appeals Council denied Plaintiff's request for review, thereby making ALJ Silvain's non-disability finding the final administrative decision of the Commissioner. *Id.* at PAGEID 44-46. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on February 1, 2011. Doc. 2.

### B. Administrative Hearing

At the December 14, 2009 administrative hearing, ALJ Silvain asked Plaintiff to describe his pain disorder as it existed from May 15, 2007 through December 31, 2007. *See* doc. 6-2 at PAGEID 76, 91. Plaintiff testified that he was depressed and in constant pain. *Id.* at PAGEID 92-93. Due to his pain, Plaintiff felt tired and groggy, and had difficulty concentrating. *Id.* at PAGEID 107-08. He also experienced emotional symptoms, such as crying spells and nervousness around other people. *Id.* at PAGEID 108. He reported that, when he took his pain medication, it reduced his pain. *See id.* at PAGEID 93.

As for his daily activities in 2007, Plaintiff testified that he spent a majority of his day in a reclining chair and watched television. *Id.* at PAGEID 94-95. He did not do any household chores.

*Id.* at PAGEID 99-100. Plaintiff estimated that he drove two or three times per week. *Id.* at PAGEID 88.

In light of positive drug tests in the record, ALJ Silvain questioned Plaintiff regarding his drug use. *Id.* at PAGEID 80-81. Plaintiff testified that he had never used cocaine or marijuana. *See id.* at PAGEID 81. He also testified that he had not drank alcohol since 1989. *Id.* at PAGEID 103.

Plaintiff reported that he can lift a gallon of milk as long as he does not have to bend over to pick it up. *Id.* at PAGEID 103-04. Further, Plaintiff estimated that he can sit and stay focused for twenty to twenty-five minutes. *Id.* at PAGEID 104. He testified that standing or sitting, without reclining, for longer than thirty to forty minutes causes him pain. *Id.*

In addition, vocational expert Charlotta Ewers ("VE") testified before ALJ Silvain. *Id.* at PAGEID 112-23. She testified that Plaintiff cannot perform his past relevant work. *Id.* at PAGEID 117. Based on ALJ Silvain's hypothetical, and Plaintiff's age, education, and work experience, the VE testified there were 3,400 jobs in the Dayton regional economy which Plaintiff could perform, including weight tester, lens inserter, charge account clerk, and microfilm document preparer. *Id.* at PAGEID 117-18.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.* Thus, the Commissioner has a "'zone of choice' within which he can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 763, 773 (6th Cir. 2001).

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423 (a), (d). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* § 423(d). A DIB claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4).

## III. ANALYSIS

As a preliminary matter, the Court notes that Plaintiff has a limited period of time to prove that he was "disabled" -- between May 15, 2007 and December 31, 2007. Further, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 7 at PAGEID 737-40, 743-45; doc. 11 at PAGEID 771-76, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In his Statement of Errors, Plaintiff argues that ALJ Silvain erred by: (1) affording insufficient weight to the opinions of his treating physicians; (2) finding him not fully credible; and (3) relying on the VE's testimony. *See* doc. 7.

## A. Substantial Evidence Supports ALJ Silvain's Determination That He Was Bound by ALJ Armstead's Previous RFC Finding

The Court will first address how ALJ's Armstead decision on May 14, 2007 impacts ALJ's Silvain's decision now before the Court. In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit held that, under the doctrine of *res judicata*, the Commissioner is bound by his disability determination in a prior final decision absent changed circumstances. *Id.* at 842-43.

Here, ALJ Silvain correctly recognized that, under *Drummond*, he was bound by ALJ Armstead's previous RFC determination, unless there was a significant change in Plaintiff's impairments. Doc. 6-2 at PAGEID 61-62.[4] After reviewing the medical records, ALJ Silvain determined that Plaintiff's physical impairments had not significantly changed and therefore did not disturb the prior RFC finding. *Id.* Nonetheless, giving the "benefit of doubt to [Plaintiff's] subjective allegations," ALJ Silvain added two restrictions to ALJ Armstead's previous RFC finding: (1) Plaintiff must be permitted to alternate positions at fifteen-minute intervals; and (2) Plaintiff could not be required to stoop, kneel, crouch, or crawl. *Id.*

ALJ Silvain gave specific reasons for finding that Plaintiff's physical impairments had not significantly changed. He noted that a December 2007 MRI showed that Plaintiff had the same

---

[4]In his May 2007 decision, ALJ Armstead found that Plaintiff had the following RFC: "The claimant is capable of performing the basic functional requirements of sedentary work, as such work is defined for Social Security purposes, subject to the following additional limitations: lifting of no more than ten pounds occasionally and five pounds frequently; can sit as much as six hours during any given eight-hour workday; can stand and walk as much as two hours during any given eight-hour workday; should be given the opportunity to sit or stand an added five minutes per hour at his convenience and need not be consecutively; only occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolding; all other posturals are occasional; no exposure to hazards such as or similar to heights and moving machinery; no exposure to concentrated heat, cold, wetness, humidity, vibration; no more than occasional twisting at the trunk; can occasionally bend forward to 45-degree angle without restriction by locking the spine by slight backwards extension and then bend forward 45 degrees using the hips." Doc. 6-3 at PAGEID 146.

spinal condition as he did when the prior RFC finding was made: multi-level degenerative disc disease and mild narrowing of the neural exit foramina. Doc. 6-7 at PAGEID 450; *see also* doc. 6-9 at PAGEID 729. In addition, ALJ Silvain recognized that physical examinations of Plaintiff conducted after May 2007 did not reveal a significant difference in nerve root compression. *See, e.g.,* doc. 6-8 at PAGEID 494, 541, 570, 605-06, 613-14, 624-25, 636-37, 653-54, 662; doc. 6-9 at PAGEID 697, 702.

Further, ALJ Silvain relied on the opinions of several doctors who, after May 2007, opined that Plaintiff retained the RFC to perform sedentary work. In January 2008, Dr. McCloud, after reviewing Plaintiff's medical records, found that Plaintiff's RFC had not changed based on his physical impairments, doc. 6-7 at PAGEID 469-76, and Dr. Klyop affirmed that assessment in May 2008. *Id.* at PAGEID 489. Dr. Duritsch opined, in August 2009, that Plaintiff was capable of performing a reduced range of sedentary work. Doc. 6-9 at PAGEID 699.

Moreover, ALJ Silvain recognized that, following ALJ Armstead's decision, Plaintiff continued to receive only conservative treatment for his physical impairments. *See, e.g.,* doc. 6-8 at PAGEID 565, 570, 606-07, 637, 654-55; doc. 6-9 at PAGEID 732. Thus, substantial evidence supports ALJ Silvain's conclusion that Plaintiff's physical impairments had not worsened since ALJ Armstead's decision so as to warrant a significant departure from ALJ Armstead's previous finding of Plaintiff's RFC.

Nonetheless, ALJ Silvain recognized that Plaintiff had developed a mental impairment -- pain disorder -- since ALJ Armstead's decision. Doc. 6-2 at PAGEID 62. To determine how Plaintiff's pain disorder affected his ability to work, ALJ Silvain evaluated the relevant evidence, including Plaintiff's subjective complaints and the limitations proposed by psychologist Donald

Weinstein, Ph.D., who diagnosed Plaintiff with the disorder in September 2007. *See id.*; doc. 6-7 at PAGEID 381-85.

To accommodate Plaintiff's pain disorder, ALJ Silvain added several restrictions to Plaintiff's RFC: "performing simple, routine, and repetitive tasks in a work environment free of fast paced production requirements and which involved no more than simple, work-related decision[s] with few, if any workplace changes, and which involved no more than occasional interaction with the public and co-workers." Doc. 6-2 at PAGEID 60.

In sum, ALJ Silvain's finding -- that Plaintiff's physical impairments had not significantly changed -- is supported by substantial evidence. Thus, ALJ Silvain correctly determined that he was bound by ALJ Armstead's prior RFC finding under *Drummond.* Accordingly, the dispositive issue before this Court is whether Plaintiff's subsequent diagnosis of chronic pain disorder rendered him "disabled" on or before December 31, 2007.

### B. Substantial Evidence Supports ALJ Silvain's Decision to Not Defer to the Opinions of Plaintiff's Treating Physicians

Plaintiff first argues that ALJ Silvain erroneously discredited the opinions of his treating physicians -- Dr. Adams, Dr. Altic, Dr. Murray and Dr. Leak -- in violation of the treating physician rule,[5] and failed to give good reasons for doing so. Doc. 7 at PAGEID 742-43. Plaintiff does not point to the specific disability findings of these doctors, however.[6] *See id.* Based on the Court's

---

[5]The treating physician rule requires an ALJ to give controlling weight to a treating source if the opinion is well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

[6]      In the Statement of Errors, Plaintiff focuses on his primary care physician, Dr. Adams. *See* doc. 7 at PAGEID 742-47. It appears that Plaintiff is referring to Dr. Adams' non-disability finding in November 2007 -- that Plaintiff was "not able to work." Doc. 6-7 at PAGEID 355. In addition, Plaintiff appears to be referring to Dr. Murray's standard notation on his treatment reports that Plaintiff is "totally disabled from all work activities at this time." *See, e.g.*, doc. 6-8 at PAGEID 499, 511, 515, 520, 526, 539. Neither doctor

10

review of the record, none of these doctors found Plaintiff disabled due to his chronic pain disorder. *See* doc. 6-7 at PAGEID 354-55; doc. 6-8 at PAGEID 499, 506-07, 511, 515, 520, 526, 539; doc. 6-9 at PAGEID 715.

It appears that there are only two psychologist opinions in the record that even hint that Plaintiff may not be able to work as a result of his pain disorder. Dr. Weinstein stated that Plaintiff was temporarily disabled due to his pain disorder, and recommended that he undergo psychotherapy. Doc. 6-7 at PAGEID 385. However, there is no evidence that Plaintiff attended psychotherapy.[7] In addition, Dr. Tecklenburg, who examined Plaintiff as part of his worker's compensation claim, found that Plaintiff was six percent (6%) impaired by his pain disorder. Doc. 6-9 at PAGEID 713. However, Plaintiff has not alleged that these psychologists were his treating sources. *See* doc. 7 at PAGEID 742-47.

Accordingly, there were no treating source opinions to which ALJ Silvain should have deferred. Because ALJ Silvain was bound by ALJ Armstead's previous RFC finding regarding Plaintiff's physical impairments, he reasonably evaluated only how Plaintiff's mental impairment (chronic pain disorder) affected his ability to perform work. Plaintiff has not presented any treating

---

mentioned pain disorder as a basis for their respective disability findings. *See id.* at PAGEID 354.

ALL Silvain acknowledged the disability findings of Dr. Adams and Dr. Murray, but rejected them on the grounds that they were not supported by the objective and clinical findings in the record, nor showed a significant change in the severity or character of Plaintiff's physical impairments. Doc. 6-2 at PAGEID 63. After carefully reviewing the record, the Court finds that ALJ Silvain's decision -- to not defer to the disability findings of Dr. Adams and Dr. Murray -- is based on substantial evidence. An ALJ may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). Such is the case here. Neither opinion is sufficiently supported by objective medical evidence to show that Plaintiff's physical impairments had worsened to such an extent to warrant a significant departure from ALJ Armstead's previous RFC finding.

[7]Social Security regulations require a claimant to follow prescribed treatment if it can restore his or her ability to work. 20 C.F.R. § 404.1530.

11

source opinions to show that his pain disorder is disabling. Nor has he submitted any records suggesting that he underwent mental health treatment. Therefore, Plaintiff's treating physician argument lacks merit.

### C. Substantial Evidence Supports ALJ Silvain's Credibility Assessment

Plaintiff also challenges ALJ Silvain's credibility assessment. An ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *Casey,* 987 F.2d at 1234. The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [a claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (brackets added). In evaluating a claimant's assertions of disabling pain, the ALJ must engage in a two-step process. *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ should determine whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain. *See id.* Second, the ALJ should evaluate the severity of the alleged pain in light of all relevant evidence, including the factors set out in 20 C.F.R. § 404.1529(c).[8] *See id.* at 1039-41.

Here, ALJ Silvain did not completely disregard Plaintiff's allegations of pain, but determined that they lack credibility to the extent that Plaintiff claims he is totally disabled. *Id.* at PAGEID 63. Indeed, ALJ Silvain added two physical limitations to Plaintiff's RFC, as well as several mental limitations, based on Plaintiff's pain allegations. *See* doc. 6-2 at PAGEID 61-62.

---

[8]There are seven factors listed in 20 C.F.R. § 404.1529(c): (1) daily activities; (2) the location, duration, frequency and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain; (6) any measures used to relieve the symptoms; and (7) other factors concerning the functional limitations and restrictions due to the symptoms.

ALJ Silvain reasonably concluded that Plaintiff was not fully credible. *See* doc. 6-2 at PAGEID 62-63. Notably, ALJ Silvain recognized that "the veracity of the claimant's allegations is significantly undermined by inconsistencies in his testimony concerning alcohol and/or drug use." *Id.* at PAGEID 63. The record shows that Plaintiff tested positive for cocaine, doc. 6-8 at PAGEID 501, 625; yet, at the administrative hearing, he testified that he had never used cocaine. Doc. 6-2 at PAGEID 81. Likewise, he testified that he never drank alcohol, doc. 6-2 at PAGEID 103, which was inconsistent with his statement to Dr. Tecklenburg, in July 2009, that he drinks alcohol occasionally. *See* doc. 6-9 at PAGEID 707. In addition, ALJ Silvain considered the following factors: there was no evidence of Plaintiff experiencing adverse side effects from his medication or treatment; and he had received only conservative treatment. Doc.6-2 at PAGEID 63. Moreover, ALJ Silvain reasonably found that Plaintiff's reported daily activities were outweighed by the other factors undermining his credibility. *See id.*

Accordingly, in making the credibility assessment, ALJ Silvain applied the proper factors and reasonably concluded that Plaintiff's pain allegations were not entirely credible. Further, ALJ Silvain's reasons for making such a finding are each supported by substantial evidence.

### D. ALJ Silvain Properly Relied on the VE's Testimony

Plaintiff also argues that ALJ Silvain improperly relied on the VE's testimony because: (1) the hypothetical regarding Plaintiff's limitations was inaccurate; and (2) the VE's testimony -- that the cited jobs could be performed with a sit/stand option at fifteen-minute intervals -- was inconsistent with the *Dictionary of Occupational Titles* ("DOT"). *See* doc. 7 at PAGEID 752-54.

At the "fifth step," the Commissioner must prove that there is work available in the economy that the claimant can perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). To

satisfy this burden, the ALJ can rely on the VE's testimony, as long as the VE's testimony is in response to an accurate hypothetical of the claimant's physical and mental limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). In formulating the hypothetical, the ALJ needs to incorporate only those limitations that he or she accepts as credible. *See Casey*, 987 F.2d at 1235.

Here, ALJ Silvain's hypothetical to the VE included all of the limitations provided for in Plaintiff's RFC, *see* doc. 6-2 at PAGEID 114-17, and, as discussed above, that RFC finding is supported by substantial evidence. Based on that hypothetical, the VE testified that there are 3,400 jobs in the Dayton regional economy which Plaintiff could perform. *Id.* at PAGEID 117-18. Accordingly, ALJ Silvain satisfied his "step five" burden.

Moreover, Plaintiff's argument -- that ALJ Silvain erred in crediting the VE's testimony because it is was inconsistent with the DOT -- lacks merit. The VE is not required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). Further, ALJ Silvain fulfilled his duty by asking the VE whether his testimony was "pursuant to the DOT," *id.* at PAGEID 121, and Plaintiff's counsel did not interrogate the VE regarding any conflicts between her testimony and the DOT. *See* doc. 6-2 at PAGEID 119-21. *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).[9] Accordingly, ALJ Silvain did not err in relying on the VE's testimony, and substantial evidence supports his "step five" finding.

---

[9]The VE testified that a person could alternate between sitting and standing every fifteen minutes in performing the cited jobs. *See* doc. 6-2 at PAGEID 120.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing.

The ALJ's decision is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability finding (*i.e.*, ALJ Silvain's April 2010 decision) be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

February 2, 2012                                            **s/Michael J. Newman**
                                                                                           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).